UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SHAWN MAYNARD COTE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-cv-00081-NT |
| | ) | |
| PATRICIA BARNHART, *et als.*, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A**

Shawn Maynard Cote, an inmate at the Maine State Prison who identifies himself as a Native American, complains of racially insensitive language directed at him by prison officials and a cell search allegedly conducted in retaliation for related grievance activity. Cote has leave of court to proceed *in forma pauperis*. His complaint is subject to screening pursuant to sections 1915(e) and 1915A of Title 28. I recommend that the Court dismiss the action, for reasons that follow, unless Cote files an amended complaint that describes something more significant than a solitary, albeit thorough, cell search.

**THE SCREENING DUTY**

Federal law imposes on district courts the duty to review at the earliest opportunity any civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In its review, the court is to "identify cognizable claims" and otherwise "dismiss the complaint, or any portion of the complaint," to the extent that it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). Similarly, Congress has directed that the district courts "shall" dismiss "at any

1

time" cases or claims proceeding *in forma pauperis*, if the court determines that the action is frivolous, malicious, fails to state a claim, or seeks money damages from an immune defendant. Id. § 1915(e).

**DISCUSSION**

Cote's complaint is subject to screening because he is a prisoner who seeks redress from government employees and because he is proceeding *in forma pauperis*. At present, the allegations in Cote's complaint fail to state a claim, for reasons described below. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). As a *pro se* litigant, Cote's pleadings should be liberally construed and may be interpreted in light of supplemental submissions. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003); Burns v. Town of Lamoine, 43 F. Supp. 2d 63, 68 (D. Me. 1999). In some circumstances, if it appears that a pro se litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to supplement the pleadings, all in order to avoid a scenario in which a pro se plaintiff's claims are summarily dismissed with prejudice based on a failure to plead sufficient facts. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Murphy, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (not for publication).

Cote seeks to vindicate federal rights against deprivation at the hands of state prison officials. According to his complaint, Cote had a verbal altercation with Corrections Officer Eric

Beuno in which Officer Beuno asked Cote "whether he grew up on a reservation." Cote filed a grievance. Warden Barnhart referred the matter to "Unit Manager" Rusty Worcester. According to Cote, Worcester conducted a brief investigation, "made some not so friendly comments, promised he'd follow up with me" and ultimately failed to do so. Sometime after Cote's grievance (presumably), Corrections Officer Gary Waltz participated in a search of Cote's cell. Cote said to Waltz that Waltz's "'tearing' my cell apart was a repercussion to my initial complaint" and that "this is all racist." According to Cote, Waltz responded: "So what if it is." Cote alleges that he had a meeting with Unit Manager Worcester, whether before or after Waltz's search is unclear, and that Worcester told him he "was just 'claiming to be Indian'" and that he was, in fact, "whiter than" Worcester. According to Cote, Worcester instructed him to "stop immediately playing the 'racist card' on his officers" and that he "looked like some 'lawsuit seeking Indian.'" (Compl. ¶ IV.)

Title 42 U.S.C., section 1983 confers upon every United States citizen a right to redress against any person who, acting under color of state law, causes a deprivation of his or her "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To maintain a claim under section 1983, a plaintiff must establish two things: (1) that the conduct complained of has been committed under color of state law and (2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999) (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)). Other than providing a cause of action, section 1983 of the Civil Rights Act does not confer any substantive rights; the rights that are vindicated in the action have to arise under another federal statute or constitutional provision. Baker v. McCollan, 443 U.S. 137, 144 n.3, (1979). "As in any action under § 1983, the first step is to identify the exact contours of the

3

underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998). Cote does not identify which rights he believes the defendants violated, but he does not have to do so as a *pro se* litigant. His factual allegations suffice to indicate the constitutional provisions that might be at issue. The question is whether the allegations suffice to state a claim under any of the applicable constitutional standards. Cote complains of two things: abusive language and a cell search. Each is addressed in turn.

A.     **Abusive language**

The Court obviously does not condone racist remarks on the part of corrections officers or other acts of harassment directed at inmates. However, verbal harassment does not rise to the level of a constitutional deprivation just because the speaker is a state officer and the harassment includes racist language. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) ("The Constitution does not protect against all intrusions on one's peace of mind.") (collecting cases and considering substantive due process claim); See also, e.g., Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding that sheriff's threat to hang prisoner did not state a claim); Keyes v. Albany, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including 'racial epithets'], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); Bolden v. Mandel, 385 F. Supp. 761, 763-64 (D. Md. 1974) (dismissing § 1983 claim related to prison guard's use of racist insult and threat of bodily harm to inmate); Piggee v. O'Brien, No. 7:08-cv-00474, *12-14, 2008 U.S. Dist. Lexis 96293, 2008 WL 5054133, *5 (W.D. Va. Nov. 26, 2008) (dismissing § 1983 claim related to use of racial epithet and abusive language in the absence of a use of force); Johnson v. Schiro, No. CV 08-9-PHX-MHM (GEE), 2008 U.S. Dist. Lexis 58868, *6 (D. Ariz. July 10, 2008) (considering such a claim from an eighth amendment perspective and finding: "Although racial slurs are repugnant, their use

does not constitute cruel and unusual punishment.") Cote's complaint about the use of racist language fails to state an independent claim for deprivation of a federal right.

**B.     Cell search**

Prison inmates do not have any fourth or fourteenth amendment privacy or liberty right in relation to cell searches. Consequently, a due process claim does not arise on these facts. Hudson v. Palmer, 468 U.S. 517, 525-30 (1984). Nor can it reasonably be said that Cote's allegations describe "cruel and unusual punishments" for purposes of the Eighth Amendment. Although "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)), cruel and unusual punishment entails a denial of "the minimal civilized measure of life's necessities," id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), and a thorough cell search is not "sufficiently serious," id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)), to describe objectively cruel and unusual treatment.

What remains is the equal protection clause of the Fourteenth Amendment. The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The equal protection clause requires that "similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). To plead a plausible equal protection claim, the factual allegations must reasonably suggest that the plaintiff was "selectively" subjected to negative treatment "based on impermissible considerations," including race or religion, an "intent to inhibit or punish the exercise of constitutional rights," or a "malicious or bad faith intent to injure a person." Id.

Cote's allegations involve race and the right to petition, assuming that prison grievances are an exercise of the first amendment right to petition the government for redress of grievances.[1] However, at base he is still complaining of a search of his cell conducted sometime after he participated in a verbal altercation. Obviously, Cote cannot very well allege that he is entitled to be free from cell searches because he is a Native American or because he grieved an officer's use of racially insensitive language. All prisoners are subject to random searches regardless of race. Moreover, Cote has acknowledged that he engaged in a verbal altercation with Officer Beuno. That fact distinguishes him along lines other than race.[2]

Because Officer Beuno's use of abusive language would not give rise to a constitutional claim, standing alone, and because Cote contends that the retaliation arose only after he filed a grievance, I conclude that the allegations are appropriately evaluated in terms of a claim of disparate treatment based on Cote's decision to grieve the matter with prison authorities. In the context of an equal protection claim based on retaliation for exercising a constitutional right, the standard requires that the reprisal in question, viewed objectively, be sufficiently adverse to deter a "reasonably hardy individual" from exercising his rights. Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (involving claims pressed by a public employee rather than a prisoner). Outside of the prison context, adverse actions can suffice even if they are "relatively minor." Id. (quoting Rivera-Jimenez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004)). The First Circuit has not addressed enough of these cases to clearly describe where the fulcrum lies in the context of prison litigation, but it has addressed these kinds of claims on at least four occasions.

---

[1] The federal Constitution provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[2] When it comes to prison administration, the courts must afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

In <u>McDonald v. Hall</u>, 610 F.2d 16, 18 (1st Cir. 1979), the Court of Appeals held that a prisoner stated a claim of unlawful retaliation for the exercise of his right to access the courts based on an allegation of a retaliatory transfer. In <u>Ferranti v. Moran</u>, 618 F.2d 888 (1st Cir. 1980), the Court reversed the dismissal of an action alleging inappropriate long-term confinement in maximum security, a refusal to allow needed medical treatment, mail tampering, and destruction of a radio. <u>Id.</u> at 889-90. Similarly, in an unpublished opinion in <u>Oropallo v. Parrish</u>, No. 93-1953 (1st Cir. May 5, 1994), the Court reversed the dismissal of a prisoner's equal protection retaliation claim alleging that a prison official authored a false disciplinary report, framed the prisoner with false evidence, and imposed severe punishment in excess of what would ordinarily be imposed for the violation in question, though the Court also remanded with an instruction that the prisoner receive an opportunity to amend his pleading for a more definite statement. 1994 U.S. App. Lexis 9748, *12-13, 1994 WL 168519, *4. <u>McDonald</u>, <u>Ferranti</u>, and <u>Oropallo</u> all involved more serious allegations than what is presented in Cote's complaint.

More recently, in <u>Starr v. Dube</u>, the Court of Appeals affirmed a summary judgment decision that precluded a retaliation claim premised on an allegedly unjustified disciplinary proceeding that did not result in the imposition of any sanction against the prisoner. 334 Fed. Appx. 341, 342-43 (1st Cir. 2009) (unpublished). Here, Cote complains about the fact that his grievance was unsuccessful, but he does not complain about being subjected to false disciplinary proceedings. Based on this guidance, it appears safe to say that Cote's claim is not actionable to the extent he complains that his grievance against Officer Beuno did not turn out the way he hoped.

7

Closer to the mark, the trial court in Starr did conduct a trial on the prisoner's claim that he was subjected to a retaliatory cell search described as a "destructive search." Id. at 342. The Court of Appeals did not review that particular aspect of the trial court's decision because the jury ultimately returned its verdict in favor of the defendants in the action. Id. A closer looks reveals some important differences between the facts in Starr and those alleged by Cote.

In his unpublished summary judgment order, Judge Steven McAuliffe indicated that the search in question "ruined much of Starr's stored food by pouring it out and contaminating it with toiletries and cleaning supplies, destroyed photographs and magazines, and damaged Starr's legal materials by, among other things, ruining many of his legal papers with food and cleaning supplies and throwing a law book into the toilet." Starr v. Dube, No. 05-cv-264-SM, 2007 U.S. Dist. Lexis 90430, *6, 2007 WL 4320743, *2 (D. N.H. Dec. 7, 2007). Interestingly, the defendants in Starr did not even argue that the search in question was insufficiently adverse to deter the exercise of constitutional rights. In any event, the search at issue in Starr was a destructive one, and Cote's limited allegations do not describe such a search. He does allege that he remarked to one searching officer that the officer was "tearing" the cell apart, but he does not actually allege what this search entailed.[3] In my view, the limited allegations presented by Cote are insufficient to support an inference of a reprisal that would deter a reasonably hardy inmate from exercising his rights. In particular, Cote's allegations do not allege more than a thorough search of his cell. For this reason, I do not believe that Cote's complaint states a claim for violation of the Equal Protection Clause.

---

[3] The Ninth Circuit has reversed an entry of summary judgment in a case involving a cell search coupled with a resulting disciplinary sanction for contraband, which discipline was allegedly more severe than the norm. The Court highlighted the discipline in its opinion, noting that "the defendants were within their rights to search [the plaintiff's] cell." Remeido v. Woodford, 173 Fed. Appx. 636, 637 (9th Cir. 2006) (unpublished).

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court dismiss Cote's complaint in its entirety, including his claim of retaliation, because Cote's current complaint does not describe retaliatory acts that would deter a reasonably hardy inmate from exercising his rights. In the event Cote seeks to amend his complaint as a matter of course *prior* to service in the context of any objection to this recommended decision, I recommend that the Court review any proposed amended complaint in light of the principles set forth in this recommended decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 23, 2012 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge